Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| CONSEJO DE TITULARES DEL CONDOMINIO LA CIMA DE TORRIMAR, ATTENURE HOLDINGS TRUST 3 Y HRH PROPERTY HOLDINGS LLC<br><br>Peticionarios<br><br>v.<br><br>QBE SEGUROS<br><br>Recurrido | KLCE202400171 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso número: BY2019CV05283<br><br>Sobre: Daños y Otros |
|---|---|---|

Panel integrado por su presidente, el juez Bermúdez Torres, el juez Adames Soto y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

# S E N T E N C I A

En San Juan, Puerto Rico, a 20 de marzo de 2024.

Comparece la parte peticionaria, el Consejo de Titulares del Condominio La Cima de Torrimar, Attenure Holdings Trust 3 y HRH Property Holdings, LLC, mediante el recurso de epígrafe y nos solicitan la revocación de la *Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, el 17 de noviembre de 2023, notificada el 21 del mismo mes y año. En el referido dictamen, el foro recurrido determinó que lo relacionado a la suscripción, reservas y reaseguro no era pertinente ni relevante para la controversia del caso, por lo que declaró No Ha Lugar la *Moción para Compeler Descubrimiento* promovida por la parte peticionaria.

Por los fundamentos que expondremos a continuación, se expide el auto de *certiorari*, en cuanto al primer error señalado, y se modifica el dictamen recurrido. Veamos.

I

El 9 de septiembre de 2019, el Consejo de Titulares del Condominio La Cima de Torrimar, Attenure Holdings Trust 3 y HRH Property Holdings,

LLC (peticionarios), incoaron una *Demanda*,[1] posteriormente enmendada,[2] sobre incumplimiento de cubierta de seguros, daños, sentencia declaratoria, dolo y mala fe en la ejecución del contrato, en contra de QBE Seguros (Óptima Seguros o recurrido). En síntesis, alegaron que, el Condominio La Cima de Torrimar tuvo daños causados por el paso del Huracán María en el año 2017. Señalaron que, para esa fecha, dicha propiedad estaba asegurada bajo la póliza de propiedad comercial emitida a su favor por Óptima Seguros. Arguyeron que el recurrido se había negado a pagarles los daños a la propiedad estimados en $5,505,306.98. Según adujeron, Óptima Seguros violó las disposiciones de la Ley Núm. 77 de 19 de junio de 1957, según enmendada, conocida como el *Código de Seguros de Puerto Rico*, 26 LPRA sec. 101 *et seq.* (Código de Seguros), actuó de forma indiferente e irrazonable y se negó a reconocer y pagar los daños de la mencionada propiedad. En vista de ello, solicitó una sentencia declaratoria, la indemnización por el monto de los daños cubiertos bajo la póliza en cuestión, más el pago de las costas, intereses y honorarios de abogado.

Por su parte, el 9 de marzo de 2022, Óptima Seguros presentó su alegación responsiva.[3] En esencia, negó las alegaciones esbozadas en su contra. Como parte de sus defensas afirmativas, planteó que los daños alegados por los peticionarios eran exagerados, especulativos, infundados y excesivos. Añadió que dicha sobreestimación y el reclamo de daños inexistentes constituía fraude.

Luego de varios trámites procesales, el 25 de octubre de 2023, la parte peticionaria instó una *Moción para Compeler Descubrimiento*.[4] Sostuvo que había realizado esfuerzos razonables y de buena fe con Óptima Seguros, en aras de resolver los asuntos relacionados al descubrimiento de prueba sin tener que acudir al tribunal. No obstante, alegó que, ante la insuficiencia de las contestaciones y respuestas

---

[1] Apéndice del recurso, págs. 1-12.
[2] Íd., págs. 13-25.
[3] Íd., págs. 26-53.
[4] Íd., págs. 54-79.

suplementarias al *Primer Pliego de Interrogatorios y Requerimiento para la Producción de Documentos*, recurrió al foro primario en auxilio. Argumentó que el descubrimiento de prueba solicitado a Óptima Seguros: (1) era pertinente; (2) conducía a prueba pertinente; (3) no era prueba privilegiada; e (4) imponía una carga mínima al recurrido. Según arguyó, la información relacionada a los interrogatorios notificados estaba típicamente contenida en el expediente de reclamación del caso y en documentos producidos rutinariamente en las reclamaciones sobre cubiertas de seguros. En vista de ello, solicitó que se le ordenara a Óptima Seguros, en un término perentorio, a proveer la información y documentación requerida por esta como parte del descubrimiento de prueba. En específico, solicitó que se descubriera lo siguiente:

> (a) [E]l expediente de suscripción y lo relacionado al proceso de suscripción de la póliza objeto del presente litigio;
>
> (b) [L]a información sobre las reservas relacionadas a la reclamación de La Cima de Torrimar;
>
> (c) [L]a información sobre el proceso de reaseguro en lo relacionado a la reclamación de La Cima de Torrimar;
>
> (d) [L]a información sobre la estructura de compensación de Óptima en lo relacionado a la reclamación de La Cima de Torrimar;
>
> (e) [C]ada una de las partidas, hechos y evidencia en los que Óptima sostiene que cualquier partida de daño [de] la [p]ropiedad [a]segurada en la [r]eclamación es preexistente[.][5]

En respuesta, el 14 de noviembre de 2023, Óptima Seguros se opuso.[6] Sostuvo que los documentos concernientes a los asuntos sobre la suscripción de la póliza, la reserva de la reclamación y el reaseguro no eran pertinentes ni estaban relacionados a las alegaciones esbozadas en la *Demanda*, por lo que no eran descubribles. En cuanto a la información sobre la estructura de compensación de los ajustadores y empleados de la aseguradora, arguyó que tal petitorio era académico, toda vez que ya le

---

[5] Apéndice del recurso, pág. 55.
[6] Íd., págs. 201-214.

había provisto a la peticionaria copia del contrato de servicio del ajustador independiente, quien atendió la presente reclamación. Sobre el quinto requerimiento, adujo que esa información fue provista mediante la entrega de los estimados extrajudiciales, como los informes periciales realizados por la aseguradora. Sobre ese particular, abundó que la parte peticionaria tuvo amplia oportunidad de preguntarle a los peritos durante sus deposiciones todo lo relacionado a sus informes y los daños que estos, de acuerdo con su conocimiento y experiencia, entendían que no estaban relacionados con el Huracán María. Por otro lado, reiteró que no procedía la producción solicitada en torno al expediente de suscripción, toda vez que la controversia plasmada en la acción de epígrafe no versaba sobre el análisis y la aceptación del riesgo, como tampoco sobre la validez de las cláusulas contenidas en la póliza. Asimismo, solicitó que el tribunal también ordenara la protección de lo anterior por tratarse de información privilegiada, pues el material solicitado para la evaluación de riesgo constituía secretos de negocio.

Evaluadas las posturas de las partes, el 17 de noviembre de 2023, notificada el 21 del mismo mes y año, el Tribunal de Primera Instancia emitió la *Orden* que nos ocupa.[7] Concluyó que no procedía el descubrimiento de prueba solicitado por la parte peticionaria, en cuanto a temas de suscripción, reservas y reaseguro. Determinó que nada de lo solicitado era pertinente y relevante a la médula de la controversia en el caso de epígrafe. En vista de ello, declaró No Ha Lugar la *Moción para Compeler Descubrimiento* promovida por la parte peticionaria.

En desacuerdo, el 6 de diciembre de 2023, la parte peticionaria presentó una *Moción de Reconsideración*,[8] a la cual se opuso Óptima Seguros.[9] Atendidos los escritos de las partes, el 9 de enero de 2024, notificada al día siguiente, el foro primario emitió una *Resolución* mediante la cual declaró No Ha Lugar la solicitud de reconsideración.[10]

---

[7] Apéndice del recurso, págs. 219-220.
[8] Íd., págs. 221-227.
[9] Íd., págs. 230-233.
[10] Íd., págs. 234-236.

Inconforme con dicha determinación, el 9 de febrero de 2024, la parte peticionaria acudió ante nos mediante el recurso de epígrafe y realizó los siguientes señalamientos de error:

> Erró el Tribunal de Primera Instancia y abusó de su discreción al denegar el descubrimiento del expediente de suscripción o "underwritting" *[sic]* y lo relacionado al proceso de suscripción por determinar que dicha información no era pertinente ni relevante a la médula de la controversia en el caso de epígrafe.
>
> Erró el Tribunal de Primera Instancia y abusó de su discreción al denegar el descubrimiento de la información sobre las *reservas* relacionadas a la reclamación de [L]a Cima de Torrimar y la información sobre el *proceso de reaseguro* en lo relacionado a la reclamación de [L]a Cima de Torrimar por entender que dicha información no era pertinente ni relevante a la médula de la controversia en el caso de epígrafe.
>
> Erró el Tribunal de Primera Instancia y abusó de su discreción al no haber evaluado y tomado en consideración que la información solicitada no era privilegiada y es pertinente, por lo que debió haberse ordenado su descubrimiento.

En cumplimiento con nuestra *Resolución* del 13 de febrero de 2024, y luego de una prórroga a esos efectos, la parte recurrida compareció mediante *Oposición a Petición de Certiorari*, el 4 de marzo de 2024.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

## A

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 2023 TSPR 65, 212 DPR ___ (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021). Ahora bien, tal discreción no opera en lo abstracto. Con respecto a lo anterior y para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas

56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

[. . .]

Según se desprende de la citada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones.

A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, dispone los criterios a considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008). Véase, además, *Banco Popular de Puerto Rico v. Gómez Alayón y otros*, 2023 TSPR 145, resuelto el 19 de diciembre de 2023; *Rivera et al. v. Arcos Dorados et al.*, supra; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020). Así, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, funge como complemento a la Regla 52.1 de Procedimiento Civil, *supra. Torres González v. Zaragoza Meléndez*, supra. La precitada Regla dispone lo siguiente:

El [T]ribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A)   Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97. (Énfasis omitido).

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial*". Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Véase, además, *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

**B**

Sabido es que el descubrimiento de prueba es el mecanismo que utilizan las partes para obtener hechos, título, documentos u otras cosas que están en poder de la parte demandada o que son de su exclusivo conocimiento y que son necesarias para hacer valer sus derechos. *Mcneil Healthcare v. Mun. Las Piedras II,* 206 DPR 659, 672 (2021). El propósito del descubrimiento de prueba es: (1) delimitar las controversias; (2) facilitar la consecución de evidencia; (3) evitar las sorpresas en el juicio; (4) facilitar la búsqueda de la verdad, y (5) perpetuar la prueba. *Torres González v. Zaragoza Meléndez*, supra, págs. 24-25; *García Rivera et al. v. Enríquez*, 153 DPR 323, 333 (2001). Es por ello que, desde *Sierra v. Tribunal Superior*, 81 DPR 554, 560 (1959), el Tribunal Supremo de Puerto Rico ha reconocido lo valioso y necesario que resulta un descubrimiento de prueba amplio y liberal. *Izquierdo II v. Cruz y otros,* 2024 TSPR 20, resuelto el 6 de marzo de 2024; *Torres González v. Zaragoza Meléndez*, supra; *Mcneil Healthcare v. Mun. Las Piedras II,* supra*,* pág. 672. Dicho alcance amplio y liberal del descubrimiento de prueba, esencialmente, propicia las transacciones, acelera los procedimientos y evita sorpresas indeseables durante el juicio en su fondo. *Íd.*

Conforme a lo anterior, la Regla 23 de Procedimiento Civil, 32 LPRA Ap. V, R. 23, provee los parámetros concretos que regulan el descubrimiento de prueba en los casos civiles. *Torres González v. Zaragoza Meléndez*, supra. En particular, la Regla 23.1(a) de Procedimiento Civil, 32 LPRA Ap. V, R. 23.1(a)*,* dispone lo siguiente:

> El alcance del descubrimiento de prueba, a menos que sea limitado de algún modo por el tribunal, en conformidad con las disposiciones de estas reglas, será como sigue:
>
> > (a) *En general.*—**Las partes podrán hacer descubrimiento sobre cualquier materia, no privilegiada, que sea pertinente al asunto en controversia en el pleito pendiente**, ya se refiera a la reclamación o defensa de cualquier otra parte, incluso la existencia, descripción, naturaleza, custodia, condición y localización de cualesquiera libros, información almacenada electrónicamente, documentos u otros

objetos tangibles, y la identidad y dirección de personas que conozcan hechos pertinentes. No constituirá objeción el que la información solicitada sea inadmisible en el juicio, siempre que exista una probabilidad razonable de que dicha información conduzca al descubrimiento de evidencia admisible. (Énfasis nuestro).

[...]

Por lo tanto, existen dos (2) limitaciones al descubrimiento de prueba: (1) que el asunto que se pretende descubrir sea pertinente a la controversia que se dirime; (2) que la materia que se pretende descubrir, aunque sea pertinente, no sea privilegiada o esta quedará excluida del alcance del descubrimiento de prueba. *Izquierdo II v. Cruz y otros*, supra. Es decir, el descubrimiento de prueba se extiende a cualquier materia que no sea privilegiada y que sea pertinente al asunto en controversia. *Torres González v. Zaragoza Meléndez*, supra; *Ponce Adv. Med. v. Santiago González et al.*, 197 DPR 891, 898 (2017).

Se entiende materia privilegiada aquella que se encuentra dentro del alcance de alguno de los privilegios reconocidos en las Reglas de Evidencia de Puerto Rico, 32 LPRA Ap. VI. *Ponce Adv. Med. v. Santiago González et al.*, supra, pág. 899; *E.L.A. v. Casta*, 162 DPR 1, 10 (2004); *García Rivera et al. v. Enríquez*, supra, pág. 333. A la luz de lo anterior, en ausencia de la invocación certera y oportuna de un privilegio específico reconocido por nuestro ordenamiento jurídico, una parte en un pleito no puede objetar un requerimiento de descubrimiento de prueba bajo ese fundamento. *Íd*. Acentuamos que, los tribunales debemos interpretar la existencia de un privilegio probatorio de manera restrictiva para no entorpecer la consecución de la verdad en los procesos judiciales. 32 LPRA Ap. VI, R. 518; *Ponce Adv. Med. v. Santiago González et al.*, supra, págs. 899-900; *Pagán et al. v. First Hospital*, 189 DPR 509, 518-519 (2013).

En cuanto a la pertinencia, la citada Regla 23.1 admite el descubrimiento de todos los asuntos que puedan tener cualquier relación con la materia objeto del litigio, aunque no estén relacionados con las controversias alegadas. *García Rivera et al. v. Enríquez*, supra, págs. 333-

334. En síntesis, la prueba pertinente es aquella que produzca o pueda producir, entre otras cosas, lo siguiente:

> (a) prueba que sea admisible en el juicio; (b) hechos que puedan servir para descubrir evidencia admisible; (c) datos que puedan facilitar el desarrollo del proceso; (d) admisiones que puedan limitar las cuestiones realmente litigiosas entre las partes; (e) datos que puedan servir para impugnar la credibilidad de los testigos; (f) hechos que puedan usarse para contrainterrogar a los testigos de la otra parte; (g) nombres de los testigos que la parte interrogada espera utilizar en el juicio. *Mcneil Healthcare v. Mun. Las Piedras II,* supra, pág. 674, citando a *Sierra v. Tribunal Superior*, supra, pág. 573 esc. 10*.*

Ahora bien, lo anterior no significa que el descubrimiento de prueba sea una carta en blanco para utilizarse indiscriminadamente para hostigar y perturbar a una parte. *Torres González v. Zaragoza Meléndez*, supra; *Vincenti v. Saldaña*, 157 DPR 37, 54 (2002). Es en ese escenario que el Tribunal de Primera Instancia, en el ejercicio de su sana discreción, puede limitar el alcance y los mecanismos a utilizarse, ya que su obligación es garantizar una solución justa, rápida y económica del caso, sin que ello constituya alguna ventaja para cualquiera de las partes en el pleito. *Íd.* Sobre ese particular, nuestro Tribunal Supremo ha expresado que los foros apelativos no han de interferir con el foro primario en el ejercicio de sus facultades discrecionales**,** excepto en aquellas situaciones en que se demuestre que este último: (1) actuó con prejuicio o parcialidad; (2) incurrió en un craso abuso de discreción, o (3) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Torres González v. Zaragoza Meléndez*, supra, págs. 26-27, citando a *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000). Véase, además, *Mcneil Healthcare v. Mun. Las Piedras II*, supra, pág. 672. Del mismo modo, el referido criterio de revisión aplica a la intervención de los tribunales apelativos en cuanto a las determinaciones interlocutorias de los tribunales de instancia. *Íd.*; *Meléndez v. Caribbean Int'l. News*, 151 DPR 649, 664 (2000). Ello, a su vez, se evalúa a la luz de lo dispuesto en la Regla 52.1 de Procedimiento Civil, *supra*. *Torres González v. Zaragoza Meléndez*, supra.

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

**III**

La parte peticionaria sostiene, como primer señalamiento de error, que el Tribunal de Primera Instancia incidió al denegar el descubrimiento del expediente de suscripción (*underwriting*) y lo relacionado al proceso de suscripción, por determinar que dicha información no era pertinente a la controversia de autos. En su segundo señalamiento de error, plantea que el foro *a quo* erró al denegar el descubrimiento de la información sobre las reservas y el proceso de reaseguro relacionadas a su reclamación, por entender que dicha información no era pertinente ni relevante a la presente controversia. Como tercer y último señalamiento de error, argumenta que el foro primario incidió al no evaluar si la información solicitada era privilegiada y pertinente al caso de epígrafe, por lo que debió haberse ordenado su descubrimiento.

Luego de un examen sosegado del expediente ante nos, colegimos que, en cuanto al segundo y tercer señalamiento de error, no existe criterio jurídico que amerite nuestra intervención con lo resuelto por el Tribunal de Primera Instancia. Al entender sobre los planteamientos que la parte peticionaria propone ante este Foro, concluimos que la sala de origen no incurrió en error de derecho ni en abuso de discreción al no permitir que se descubriera la información sobre las reservas y el reaseguro. En consecuencia, por encontrarnos ante un asunto discrecional, y en ausencia de prueba que constituya un fracaso a la justicia, no sustituiremos con nuestro criterio lo correctamente resuelto por el foro de instancia. Por consiguiente, confirmamos el dictamen recurrido en cuanto a esos dos señalamientos de error.

Por otro lado, en cuanto al primer error señalado, hemos evaluado cuidadosamente el expediente ante nuestra consideración y entendemos que, conforme lo dispuesto en la Regla 52.1 de Procedimiento Civil, *supra*, y la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, tenemos

autoridad para atender el asunto ante nuestra consideración, por tratarse de asuntos relativos a privilegios evidenciarios, encontrarnos en la etapa procesal adecuada para intervenir y para evitar un fracaso a la justicia. Por ello, procede expedir el auto de *certiorari* en cuanto a dicho error y modificar el dictamen recurrido. Nos explicamos.

Sabido es que este Foro no debe de entender en asuntos sobre descubrimiento de prueba, a menos que se demuestre un fracaso a la justicia, cónsono con la Regla 52.1 de Procedimiento Civil, *supra*. Dicho esto, al examinar el pronunciamiento del cual se recurre, específicamente la denegatoria de descubrir el expediente de suscripción solicitado, se desprende que, según demostró la parte peticionaria, si esta Curia no actúa respecto a su solicitud, habría de producirse un fracaso a la justicia. *800 Ponce de León v. AIG*, 205 DPR 163 (2020).

Al examinar con detenimiento la totalidad del expediente ante nos, colegimos que la información sobre la suscripción de la póliza en cuestión no es un asunto que escape al descubrimiento de prueba en pleitos incoados en contra de las aseguradoras. El expediente de suscripción es el punto de partida del proceso de ajuste de reclamación, ya que contiene información sobre la forma en que la aseguradora, en este caso Óptima Seguros, evaluó la propiedad en controversia antes de asumir los riesgos cubiertos por la póliza. En dicha evaluación, corresponde a la aseguradora determinar la asegurabilidad, las calificaciones de riesgo, la condición, el manejo y el mantenimiento de la propiedad a ser asegurada, el modo de obtener las bases para la asignación de primas y aceptar los posibles riesgos. Dicha evaluación permite comparar la póliza expedida en cuestión con la póliza que se pudo haber expedido.

Según surge del expediente ante nos, Óptima Seguros levantó como defensas afirmativas que los daños reclamados por la parte peticionaria eran especulativos, exagerados, excesivos, infundados e inexistentes. Asimismo, alegó la existencia de fraude. Del expediente que nos ocupa, no se desprende que la parte recurrida haya renunciado a las mencionadas

defensas. Por lo tanto, la información solicitada que haga referencia al estado de la propiedad previo a suscribir la póliza cobra relevancia en el descubrimiento de prueba, debido a que es pertinente a las defensas afirmativas presentadas por Óptima Seguros en su *Contestación a Demanda Enmendada*. A tenor de lo antes expuesto, concluimos que la información solicitada sobre el expediente de suscripción es pertinente, por lo que procede su descubrimiento. Por tanto, el primer señalamiento de error se cometió.

Ahora bien, en torno a si los documentos que conforman el expediente de suscripción constituyen un privilegio de secreto de negocio, es de ver que el expediente judicial, en lo relativo a la adjudicación de esta parte de la controversia, se encuentra huérfano de lo que constituye el análisis que mandata nuestro Tribunal Supremo en *Ponce Adv. Med. v. Santiago González et al.*, supra. Ante la ausencia del antes aludido análisis, es forzoso concluir que, previo al descubrimiento del expediente de suscripción en controversia, de conformidad con el procedimiento para conceder un privilegio probatorio establecido por nuestro más Alto Foro en *Ponce Adv. Med. v. Santiago González et al.*, supra, el foro de origen deberá resolver si Óptima Seguros estableció, mediante preponderancia de la prueba, los criterios del privilegio que invoca.

En vista de lo anterior, concluimos que el Tribunal de Primera Instancia incidió en su proceder, por lo que se hace necesaria nuestra intervención en esta etapa de los procedimientos, pues lo contrario podría resultar en un fracaso irremediable de la justicia. Por consiguiente, y al amparo de lo dispuesto en la Regla 52.1 de Procedimiento Civil, *supra*, y la Regla 40 de nuestro Reglamento, *supra*, procede la expedición del auto de *certiorari*, en cuanto al primer error señalado, y la modificación de la *Orden* recurrida. Ello, a los únicos fines de permitir el descubrimiento de prueba en cuanto al expediente de suscripción, luego de que el foro *a quo* resuelva si Óptima Seguros estableció, mediante preponderancia de la prueba, los criterios del privilegio que invoca.

**IV**

Por los fundamentos que anteceden, expedimos el auto de *certiorari*, en cuanto al primer señalamiento de error, y modificamos el dictamen recurrido. En consecuencia, ordenamos que se permita el descubrimiento de prueba en cuanto al expediente de suscripción, luego de que el Tribunal de Primera Instancia resuelva si Óptima Seguros estableció, mediante preponderancia de la prueba, los criterios del privilegio que invoca. Devolvemos el caso al foro primario para la continuación de los procedimientos conforme a lo aquí resuelto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

**NOTIFÍQUESE INMEDIATAMENTE**.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones